570 So.2d 300 (1990)
COMMUNITY BANK OF HOMESTEAD, a Florida Corporation, Appellant,
v.
Charles M. VALOIS, Doris R. Valois, His Wife, and Ocean Reef Shores, Inc., a Florida Corp., Appellees.
Nos. 89-1534, 89-1533.
District Court of Appeal of Florida, Third District.
November 27, 1990.
*301-303 Allison Doliner Hockman, John R. Sutton, Miami, for appellant.
Frank, Schmitt & Frank and Michael Frank, North Bay Village, for appellees.
Before BASKIN, FERGUSON and GERSTEN, JJ.

ON PETITION FOR REHEARING
BASKIN, Judge.
Community Bank of Homestead appeals the entry of a final judgment denying its claim for deficiency judgment and awarding one dollar as nuisance damages against Charles M. Valois, Doris Valois and Ocean Reef Shores, Inc. (collectively Valois). We affirm.
Valois executed a note in favor of Community Bank secured by a mortgage of certain real property. Valois defaulted, and the bank instituted a foreclosure action. The trial court entered a judgment of foreclosure against Valois, and, on July 16, 1987, the bank purchased the property at foreclosure sale for a successful bid of $100. In December, 1987, the bank sold the property to Dr. Frederick Poppe, trustee, for $180,000 plus the realtor's commission. Subsequently, the bank instituted an action for a deficiency judgment. The bank and Valois stipulated that the debt owed totalled approximately $220,000. The bank presented evidence that it purchased the property at foreclosure sale for a nominal bid, that it resold to Dr. Poppe for $180,000 and that the fair market value of the property when it was resold in December 1987, approximately five months later, was $202,000. Valois introduced evidence that the fair market value of the property as of the date of foreclosure was $318,000. Finding that the resale price was less than fair market value, the listing price, or the appraisal, and that the resale was not an arm's length transaction, the trial court denied the claim for a deficiency judgment. We affirm on other grounds.
In S/D Enterprises, Inc. v. Chase Manhattan Bank, 374 So.2d 1121, 1122 (Fla. 3d DCA 1979), this court held that "[g]enerally, the granting of a deficiency judgment is the rule rather than the exception, unless there are facts and circumstances creating equitable considerations upon which a court should deny the deficiency decree in the exercise of its discretion." See Baxter v. Kobs, 451 So.2d 955 (Fla. 3d DCA 1984).
When the fair market value of the property on the date of the foreclosure sale[1] exceeds the debt owed, the court may *304 deny a deficiency judgment. Municipal Sav. & Loan Corp. v. Fiorentino, 512 So.2d 228 (Fla. 3d DCA 1987); Belgrano v. Finkelstein, 493 So.2d 543 (Fla. 3d DCA 1986); see Spencer v. American Advisory Corp., 338 So.2d 62 (Fla. 3d DCA 1976), cert. denied, 348 So.2d 953 (Fla. 1977). Here, the evidence as to fair market value was the price at which the property was resold to Dr. Poppe, Merrill v. Nuzum, 471 So.2d 128, 129 (Fla. 3d DCA 1985), and the appraisal of $318,000 offered by Valois' expert witness.[2],[3] Apparently, the trial judge rejected the resale price as evidence of fair market value: the court stated "[t]his case is clearly a case where the [property] was sold far far below fair market value." The bank's appraisal of the value of the property as of the date of the sale to Dr. Poppe several months later was not evidence of the value on the date of the foreclosure sale. Symon v. Charleston Capital Corp., 242 So.2d 765 (Fla. 4th DCA 1970). Because "[t]here was a sufficient evidentiary basis upon which the trial court could have concluded ... that the fair market value of the [property] purchased by the mortgagees exceeded the amount of the debt at the time of the foreclosure sale," the trial court did not abuse its discretion in denying a deficiency judgment.[4]Fiorentino, 512 So.2d at 229; Wilson v. Adams & Fusselle, Inc., 467 So.2d 345 (Fla. 2d DCA 1985); Hamilton Inv. Trust v. Escambia Developers, Inc., 352 So.2d 883 (Fla. 1st DCA 1977). In the case before us, as in Fiorentino, there was sufficient evidence that the fair market value exceeded the amount of the debt owed. There was no basis for a deficiency judgment because the bank suffered no financial loss. Fiorentino.
We also affirm the trial court's award of damages for nuisance in the amount of one dollar. Community Bank failed to demonstrate the amount of damages it suffered as a result of Valois' actions. See W.W. Gay Mechanical Contractor, Inc. v. Wharfside Two Ltd., 545 So.2d 1348 (Fla. 1989).
Affirmed.
GERSTEN, J., concurs.
FERGUSON, Judge (dissenting).
The majority opinion conflicts with this court's opinions in S/D Enterprises, Inc. v. Chase Manhattan Bank, 374 So.2d 1121 (Fla. 3d DCA 1979), Fara Mfg. Co. v. First Fed. S & L Ass'n, 366 So.2d 164 (Fla. 3d DCA 1979), and Merrill v. Nuzum, 471 So.2d 128 (Fla. 3d DCA 1985), the first district's recent opinion in Thunderbird Ltd. v. Great Am. Ins. Co., 566 So.2d 1296 (Fla. 1st DCA 1990), the fifth district's opinion in Flagship State Bank v. Drew Equip. Co., 392 So.2d 609 (Fla. 5th DCA 1981), and the fourth district's opinion in *305 Symon v. Charleston Capital Corp., 242 So.2d 765 (Fla. 4th DCA 1970).
In S/D Enterprises we held that "the granting of a deficiency judgment is the rule rather than the exception, unless there are facts and circumstances creating equitable considerations upon which a court should deny the deficiency decree in the exercise of its discretion." Id. at 1122. On this record there are absolutely no equitable considerations which justify a denial of a deficiency judgment.
The defendant, Valois, defaulted in payments on a mortgage note on which $220,000 was still owed to the bank. Foreclosure proceedings were commenced in early 1987. Valois hired his own expert who, in March 1987, rendered an opinion that the fair market value of the property was $318,000. Approximately five months later, on July 16, 1987, the property came on for foreclosure sale and was purchased by the bank for a nominal $100 amount. There were no other bids. After being issued a certificate of title in August, the bank immediately placed the property on the market with two real estate brokers. The listing price was $315,000. At the end of three months only one offer had been submitted  a $175,000 offer by Dr. Poppe.
After the March 1987 appraisal, and while the property was on the market, Valois interfered with the sale by placing "Buyer Beware" signs and items of junk construction equipment adjacent to the property.[1] It is undisputed in the record that the purpose of the defendant's conduct, which the trial court found tortious, was to discourage prospective buyers of the repossessed property. In the meantime, the defendant himself offered to purchase the property back from the bank at a low price of $150,000.

Outdated Appraisal
In my opinion, the trial court abused its discretion in relying on a five-month-old appraisal prepared by the defendant's expert to fix the fair market value of the property as of the foreclosure date. The law is fairly well settled that an appraisal which does not evaluate the subject property as of the date of public sale following foreclosure cannot be considered in determining the mortgagee's entitlement to a deficiency judgment. Flagship State Bank v. Drew Equip. Co., 392 So.2d 609 (Fla. 5th DCA 1981); Symon v. Charleston Capital Corp., 242 So.2d 765 (Fla. 4th DCA 1970). There is no evidence that the defendant's expert conducted a second appraisal after March 1987. In fact, the trial judge himself expressed doubt that the defendant's old $318,000 appraisal was realistic. See note 4, majority opinion. The only remaining competent record evidence of value is the bank's $202,000 appraisal, and the sale price of $180,000.
The suggestion in note 2 of the majority opinion, that the expert had somehow updated his earlier opinion, is not entirely accurate. When asked in a leading question whether, subsequent to the appraisal, there were any significant changes that would have had an impact on the value of the property, the expert testified, "None that were obvious." In fact, he did not undertake a new appraisal. After inspecting the property in March 1987, the appraiser, admittedly, never returned to the site.
In response to another pointed question whether he had obtained comparable sales figures for area properties sold between July 1987 and January 1988, the defendant's appraiser answered "my familiarity with the subject property is from March of 1987 the year immediately prior to the date of foreclosure." His comparable sales knowledge was based on an earlier sale of only one other property in the subdivision. Significantly, as well, the defendant's expert admitted that in his opinion the offensive signs and abandoned equipment placed next to the foreclosed property would "confuse prospective buyers" and "lengthen market time."

*306 Burden Of Going Forward With Evidence

In summing up the evidence, the trial court noted that the unfair conduct of Valois, who is a developer, caused great harm to the bank: "[T]here is no doubt in the court's mind that the actions of the defendant, Mr. Valois, in placing those signs had a tremendous detriment... ." In denying a deficiency award, however, the court concluded:
I find that the plaintiffs have met their burden in establishing that Mr. Valois intentionally and with the intent to create a nuisance and to interfere with the sale of land did hamper the ultimate sale and the value of the property ... I don't find, however, that the plaintiffs have met their burden of proof by showing how they were damaged and to what degree. (Emphasis added).
First, it was contrary to law to place the burden on the bank to prove any degree of damage caused by the defendants for the purpose of the deficiency claim. Second, it was no defense to the claim for a deficiency that the plaintiff-bank failed to prove the dollar amount of its damages in the separate tort claim.
This court has held, in accordance with settled law, that the price paid at a sale after foreclosure is presumptively a fair market value. The burden then shifts to the defendant to go forward with evidence to prove that a better price could have been obtained. Fara Mfg. Co. v. First Fed. S & L Ass'n, 366 So.2d 164 (Fla. 3d DCA 1979), cited with approval in Thunderbird, Ltd. v. Great Am. Ins. Co., 566 So.2d 1296, 1299 (Fla. 1st DCA 1990), clarified, 566 So.2d 1296, 1305 (Fla.1st DCA 1990). See also § 45.031(8), Fla. Stat. (1989); 55 Am.Jur.2d Mortgages § 922 (1971).[2] Here the defendants had to prove by the greater weight of the evidence that the bank could have sold the property for a higher price notwithstanding the defendant's tortious interference with the sale. By that legal standard the bank should prevail since the defendants failed to carry their burden. The trial court found, in rejecting the testimony of the defendants' expert, that the property's marketability and value had been "tremendous[ly]" harmed by Valois's actions.
In summation, the defendants have pointed to no legal or equitable circumstances which justified the denial of a deficiency judgment. Further, the defendants, for the reason of Valois's tortious conduct, should be equitably estopped to challenge the bank's claim for a deficiency judgment.
NOTES
[1] Savers Fed. Sav. & Loan Ass'n v. Sandcastle Beach Joint Venture, 498 So.2d 519, 522 (Fla. 1st DCA 1986) ("The date of the foreclosure sale is the date at which the fair market value is determined."); Flagship State Bank v. Drew Equip. Co., 392 So.2d 609 (Fla. 5th DCA 1981) (same); Symon v. Charleston Capital Corp., 242 So.2d 765 (Fla. 4th DCA 1970) (same).
[2] The record refutes the bank's contention that the appraisal opinion was not admissible because the appraisal was not as of the date of the foreclosure sale: the expert testified that there were no changes in market values after the appraisal. Thunderbird, Ltd. v. Great Am. Ins. Co., 566 So.2d 1296, 1304-05 (Fla. 1st DCA 1990). Defense counsel asked the following question: "Between March of 1987 and I believe it's July of 1987 the date of the foreclosure sale and then the sale date to a third party in December of 1987, based upon your best estimate and opinion as an expert in the field of property appraisal, do you feel that there was any significant impact to decrease the valuation during that time period?" The expert answered: "No, sir. We frequently work that general area. We are not aware of anything in the way of changes that would have negative impact subsequent to the date of our appraisal." The foregoing testimony is evidence that the witness considered changes subsequent to the appraisal.
[3] The bid price at foreclosure sale "may be considered by the court as one of the factors in determining a deficiency," § 45.031(8), Fla. Stat. (1987), and "upon the introduction of the evidence of the sale price, the defendant has the burden of going forward and presenting such evidence ... concerning the fair market value of the property." Fara Mfg. Co., Inc. v. First Fed. Sav. & Loan Ass'n, 366 So.2d 164, 165 (Fla. 3d DCA 1979); Thunderbird, Ltd. v. Great Am. Ins. Co., 566 So.2d 1296 (Fla. 1st DCA 1990). However, "[a] shockingly inadequate sale price in the foreclosure proceeding can be asserted as an equitable defense and the trial judge has the discretion and duty to inquire into the reasonable and fair market value of the property sold, the adequacy of the sale price, and the relationship, if any, between the foreclosing mortgagee and the purchaser at the sale, before entering a judgment on the note." R.K. Constr. Co. v. Fulton, 216 So.2d 11, 13 (Fla. 1968).
[4] The trial court determined that the "bare bones" fair market value of the property was between $186,000 and $216,000. However, the record indicates that the value referred to was as of the date of the sale to Dr. Poppe, not the date of the foreclosure sale. The trial judge stated: "[w]e are still above the price that the bank sold it for under any possible hypothesis or construction."
[1] Valois, allegedly on the advice of counsel, declined the bank's request by letter that he remove the offending signs.
[2] Although the majority opinion has been revised to cite treatise, statutory and case law authority first cited in this dissent, in my view those authorities have not properly been applied to this case.